## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HORTON ET AL.**                                        **CIVIL ACTION**

**VERSUS**                                               **NO. 17-12609**

**GLOBAL STAFFING SOLUTIONS LLC ET AL.**                 **SECTION "L" (1)**

### ORDER & REASONS

Before the Court is a joint motion seeking approval of the parties' settlement agreement filed by Plaintiff Damian Horton and Defendants Global Staffing Solutions LLC and Forrest Bethay III. R. Doc. 34. Having reviewed the settlement's terms, the parties' argument, and the applicable law, the Court is ready to rule.

### I.    BACKGROUND

In this Fair Labor Standards Act ("FLSA") dispute, Plaintiff Damian Horton alleges Defendants Global Staffing Solutions LLC ("GSS"), a Louisiana company that provides labor for a variety of industries, and Forrest Bethay III, the owner, manager, and sole member of GSS, failed to pay him both regular and overtime wages. R. Doc. 1 at ¶ 15–19. According to the Complaint, Plaintiff worked for GSS on a disaster relief project related to Hurricane Maria, which devastated parts of Puerto Rico in the fall of 2017. *Id.* at ¶ 14. The project began in October 2017 and continued until December 2017. Having not received a paycheck for the first month of his employment, Plaintiff filed suit on November 16, 2017, and received his first paycheck shortly thereafter. R. Doc. 12-3.

Alleging that nonpayment and underpayment of wages is Defendants' general practice, Plaintiff brings this suit as a collective action under the FLSA, *id.* at ¶ 24–29, and seeks wages,

overtime, and statutory damages, *id.* at ¶ 30–34. On December 8, 2017, Plaintiffs Ayana Miller, Lawrence Miller, and Linda Miller filed notices into the record consenting to be party Plaintiffs. R. Doc. 8. On March 1, 2018, over Defendants' objection, the Court granted Plaintiffs' motion for conditional class certification, defining the class as:

> All individuals employed by Global Staffing Solutions, LLC involved in packing goods for shipment to Puerto Rico to assist in disaster recovery from October 9, 2017 through November 29, 2017 who were not timely paid for all hours worked, including overtime and minimum wage.

R. Doc. 20 at 6 *as modified by* R. Doc. 25 at 1. Notice of this action was sent to 735 individuals, with 165 individuals timely returning their opt-in forms prior to the September 27, 2018 deadline.

The parties held a settlement conference with Magistrate Judge Janis van Meerveld on November 8, 2018, which resulted in a settlement. R. Doc. 32. The parties now jointly move this Court for approval of that settlement. R. Doc. 34.

## II.     PRESENT MOTION

In their joint motion, the parties argue the settlement they reached is a fair and reasonable resolution of *bona fide* disputes among them. R. Doc. 34-1 at 4–5, 7–8. They further contend the settlement was reached after arms-length negotiations and substantial discovery, and that continued litigation would be unnecessarily costly, long, and complex. *Id.* at 5–7. Finally, the parties seek attorneys' fees for Plaintiffs' counsel, and submit the requested award of attorneys' fees and costs is reasonable. *Id.* at 8.

## III.     LAW AND ANALYSIS

Congress enacted the FLSA to protect workers from substandard wages and oppressive working hours. *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). In passing the Act, Congress recognized that, "due to the unequal bargaining power as between employer and

employee, certain segments of the population require[] federal compulsory legislation to prevent private contracts on their part which endanger[] national health and efficiency and as a result the free movement of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945). The FLSA is designed to ensure each employee the Act covers receives "[a] fair day's pay for a fair day's work" and protects them from "the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981) (internal citations and quotations omitted).

The Act's provisions are mandatory, and not subject to negotiation and bargaining between employers and employees. *O'Neil*, 324 U.S. at 707; *see also Lynn's Food Stores, Inc*., 679 F.2d at 1352. Under Section 16(b), an employer who violates Section 206 or 207 is liable to the employee or employees affected in the amount of their unpaid minimum or overtime compensation and for an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

There are two ways in which claims under the FLSA can be settled.  First, the Secretary of Labor may supervise a settlement pursuant to 29 U.S.C. § 216(c).  *Lynn's Food Stores, Inc.*, 679 F.2d at 1350, 1352–53.  The "other route for compromise of FLSA claims" is for the parties to present the court with the proposed settlement, whereupon "the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353; *see also Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008). When deciding whether to approve a proposed settlement, the court must assess whether the proposed settlement is (1) the product of a *bona fide* dispute over the FLSA's provisions and (2) fair and reasonable. *Domingue v. Sun Electric & Instrumentation, Inc.*, No. 09-682, 2010 WL 1688793, at *1 (E.D. La. Apr. 26, 2010). There is a "strong presumption" in favor of finding a settlement fair.  *Cotton v. Hinton*,

559 F.2d 1326, 1331 (5th Cir. 1977); *Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728, at

*2 (E.D. La. Oct. 25, 2002).

### A.  A Bona Fide Dispute Exists

The Court must first determine whether a *bona fide* dispute exists between the parties to

"ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the

clear FLSA requirements of compensation for all hours worked, minimum wages, maximum

hours, and overtime."  *Collins*, 568 F. Supp. 2d at 719.  "If no question exists that the plaintiffs

are entitled under the statute to the compensation they seek (and therefore to liquidated damages,

as well), then any settlement of such claims would allow the employer to negotiate around the

statute's mandatory requirements. . . . Some doubt must exist that the plaintiffs would succeed on

the merits through litigation of their claims."  *Id.* at 719–20.  "[D]isagreements over hours

worked or compensation due clearly establishes a *bona fide* dispute.  The institution of a federal

court litigation followed by aggressive prosecution and strenuous defense demonstrates the

palpable *bona fides* of this dispute." *Altier v. Worley Catastrophe Response, LLC*, No. 11-241,

2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012) (citations omitted).  When a plaintiff makes a

direct allegation that a defendant violated an explicit FLSA provision, and the defendant presents

arguably legitimate defenses as to why it is not liable, courts have generally found the existence

of a *bona fide* dispute.  *See Domingue*, 2010 WL 1688793, at *1; *Altier*, 2012 WL 161824, at

*14

Here, Plaintiff alleges he worked for over a month without receiving a paycheck, which,

if true, is a clear violation of the FLSA. *See Gordon v. Maxim Healthcare Servs.*, 2014 WL

3438007, at *2–3 (E.D. Pa. July 15, 2014) (holding untimely payment violates the FLSA).

Disputed issues of fact remain, however, as to: (1) whether Plaintiffs were properly paid all

wages owed; (2) whether Plaintiffs were timely paid; (3) whether individual Defendant Forrest

Bethay qualifies as a "joint employer" under the FLSA; (4) whether Defendants acted in "good

faith," thus reducing or negating Plaintiffs' claim for liquidating damages; and (5) the total

amount of straight time and overtime worked by the Plaintiffs.

The parties have exchanged voluminous amounts of discovery and have undertaken a key

deposition. The parties also participated in settlement discussions with Magistrate Judge van

Meerveld, and those discussions, which the parties represent "lasted until well after 5:00 pm,"

ultimately resulted in a settlement. This record demonstrates extensive litigation undertaken by

the parties and evidences a *bona fide* dispute over FLSA provisions.

### B. The Settlement is Fair and Reasonable

In determining whether a settlement is fair and reasonable under the FLSA, courts are

guided by *Reed v. General Motors Corporation*, in which the Fifth Circuit enumerated six

factors for determining whether a settlement is fair in a class action under Rule 23 of the Federal

Rules of Civil Procedure. 703 F.2d 170, 172 (5th Cir. 1983). As the Fifth Circuit explained,

before approving a settlement, a district court must consider: (1) the existence of fraud or

collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the

plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class

counsel, class representatives, and absent class members. *Id.* Courts, however, "adopt or vary

these factors in their application in light of the special role of the Court in settlement of FLSA

claims." *Collins*, 568 F. Supp. 2d at 722 (noting "Rule 23 does not control FLSA collective

actions, [but] many courts have adopted many of Rule 23's procedures" given the court's

discretion under § 216(b)).

### 1.  The existence of fraud or collusion behind the settlement

In the absence of evidence to the contrary, the Court may presume there was no fraud or collusion between counsel. *Collins*, 568 F. Supp. at 725. There is no such evidence here. Rather, the parties engaged in extensive litigation, including settlement discussions with Magistrate Judge van Meerveld, until settlement was reached.

### 2.  The complexity, expense, and likely duration of the litigation and the stage of the proceedings and the amount of discovery completed

The Court considers these factors together, as the two are related. *See Collins*, 568 F. Supp. 2d at 725–26; *Altier*, 2012 WL 161824 at *2. Discovery in this case has been extensive. Prior to negotiating this settlement, the parties conducted formal discovery, independently investigated the facts and law throughout this action, and examined hundreds of pages of relevant wage and time records. Further, counsel for Plaintiffs and Defendants have analyzed the applicable law as applied to the facts discovered regarding the claims at issue, the defenses thereto, and the alleged damages. Plaintiff served written discovery on August 4, 2018, and again on August 5, 2018. Defendant served written discovery on October 3, 2018. The resulting written discovery was significant and included the production of all time and pay records for the members of the collective. R. Doc. 34-1 at 5. On October 30, 2018, Plaintiff deposed Gillis McCloskey, who was the General Manager of GSS up and until November 21, 2017. *Id.* at 2.

In their motion, the parties note that, despite these discovery efforts, discovery is only partially complete. *Id.* at 7. Without the settlement, the parties would have to undertake numerous additional depositions to ascertain the number of overtime hours each Plaintiff worked and whether that work qualified as a FLSA exemption. *Id.* Moreover, without settlement, the parties would likely have filed dispositive motions on the merits of Plaintiffs' claims and on the

6

question of Defendants' good faith. Although Defendants vigorously contest Plaintiffs' allegations, they believe further litigation would be protracted, expensive, and contrary to their best interests. The avoidance of "further costly litigation" weighs in favor of approving settlement. *Smith v. Manhattan Mgmt. Co.*, 2016 WL 915272, *2 (E.D. La. Mar. 10, 2016).

Based on the extensive efforts undertaken by the parties, and the discovery left to be undertaken, it is evident that this case has been complex and time-consuming. This weighs in favor of settlement approval.

### 3.   The probability of Plaintiffs' success on the merits

Although Plaintiffs believe they would prevail at trial, Defendants have raised several legitimate defenses. R. Doc. 34-1 at 7. Additionally, continued litigation would likely have led to dispositive motions on the issue of Defendants' good faith. *Id.* Counsel submit they recognize the complexity and expense of trying an FLSA collective action, along with the uncertainty inherent in any trial. They have considered the time invested in this case and the uncertain outcome and risk of litigation. In negotiating the settlement, counsel had the benefit of broad, independently verified information regarding Plaintiffs' claims and have determined the settlement is in the best interest of both parties. The parties thus reached this Agreement because they both realized the inherent risks in jury verdicts and the appellate process.

### 4.   The range of possible recovery

In their joint motion, the parties state:

They have taken into account the time invested in this case and the uncertain outcome and risk of litigation. In negotiating the settlement, counsel had the benefit of broad, independently verified information regarding the Plaintiffs' claims, and have determined the settlement is in the best interest of both parties. Specifically, even if the Plaintiffs had prevailed on the merits, the Defendants would have likely appealed the judgment or verdict to the United States Fifth Circuit Court of Appeals. Under such a scenario, the Plaintiff and Opt-in Plaintiffs would not see any monetary relief from this case, if any, until years from now. Through this

> settlement, however, the Plaintiff and Opt-in Plaintiffs obtain immediate relief and benefit.

R. Doc. 34-1 at 7.  The parties do not indicate, however, whether the settlement ultimately reached falls within the possible range of recovery in this case. This factor weighs neither in favor, nor against, a finding that the settlement is fair and reasonable.  *See generally Lackey v. SDT Waste & Debris Services, LLC*, No. 11-1087, 2014 WL 4809535, at *2 (E.D. La. Sept. 26, 2014). Notably, although the parties do not appraise the Court on the possible range of recovery, the Court notes that the settlement reached includes "all compensatory damages, special damages, wages, minimum wage, overtime, benefits, retirement contributions, liquidated damages, injunctive relief, declaratory relief, punitive damages, general damages, court costs, attorneys' fees, penalties, interest, and expenses and losses, and any other legally recoverable category of damages or relief directly or indirectly sustained by [Plaintiffs]." R. Doc. 35-2 at 3.

### 5.  The opinions of class counsel, class representatives, and absent class members

"The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Liger*, 2009 WL 2856246, at *4 (citing *Cotton*, 559 F.2d at 1330). Although a potential conflict of interest always exists between an attorney and members of a collective action, there is no evidence Plaintiffs' counsel has not worked in good faith to secure a reasonable compromise.  *See id.* (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974); *In re Emp. Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993)).  Moreover, Plaintiffs' counsel is experienced in wage-and-hour litigation, so the Court is confident in their assessment of the adequacy and reasonableness of the settlement.

Finally, Plaintiff entered into the proposed settlement agreement voluntarily and represented that he knowingly and fully understood he is relinquishing his claims in this matter in exchange for the agreed upon settlement. Each Opt-in Plaintiff signed a consent form agreeing to be bound by any resolution of this matter, including any settlement agreed to by the parties. In short, the parties agree the terms of this settlement are reasonable, fair, and just, and settle all claims in this lawsuit.

Looking to these factors, the Court finds the settlement constitutes a fair and reasonable resolution to the *bona fide* dispute between the parties.

### C. Attorneys' Fees

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "To determine the reasonableness of an attorneys' fee award in a FLSA collective action, judicial review is required 'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *9 (D.N.J. Mar. 26, 2012) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Collins,* 568 F. Supp. 2d at 728.

In the Fifth Circuit, attorneys' fees have traditionally been calculated using the lodestar method. *See Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999); *Lackey*, 2104 WL 4809535, at *3. Based on Fifth Circuit precedent and this Court's prior experience, the Court assess the attorneys' fees under both a lodestar and percentage method. *See In re Vioxx Products Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010); *Altier*, 2012 WL 161824, at

\*21.  The Court will first assess the fees under the lodestar method and then cross-check that amount against the percentage method.

### 1.  *The Lodestar Method*

"A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Heidtman*, 171 F.3d at 1043 (citing *Shipes v. Trinity Indus.,* 987 F.2d 311, 319–20 (5th Cir. 1993)). The resulting lodestar figure is then adjusted by a multiplier in light of the twelve *Johnson* factors. *See Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*; *see also Von Clark v. Butler,* 916 F.2d 255, 258 n.3 (5th Cir. 1990).

"[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted).  Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are presumably fully reflected and subsumed in the lodestar amount.  *Heidtman*, 171 F.3d at 1043 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)); *Shipes*, 987 F.2d at 319–22 & n.9). After

*Johnson* was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington*, 505 U.S. at 567; *Shipes*, 987 F.2d at 323). Nonetheless, an increase in the lodestar "due to superior performance and results . . . is permitted in extraordinary circumstances." *Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010).

Courts should generally compute hourly rates according to the prevailing rates in the relevant legal market. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). "An hourly rate is considered *prima facie* reasonable when an attorney has provided his hourly rate to compute the lodestar method, it is within the range of prevailing market rates, and is not contested." *Lackey*, 2014 WL 4809535, at *3 (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

Here, Defendants have agreed to bear Plaintiffs' attorneys' fees, which will be divided between the two law firms that worked as Plaintiffs' counsel on the case. Plaintiffs' counsel represent they have expended: (1) Charles Stiegler, attorney, 115.2 hours at $280.00 per hour; (2) Justin Chopin, attorney, 51.7 hours at $280.00 per hour; and (3) Brenna Martin, paralegal, 35.6 hours at $100.00 per hour. Additionally, Plaintiffs' counsel represent they incurred $1,426.70 in expenses litigating the case. This comes to a total of $51,718.00 in attorneys' fees and costs, which exceeds the amount agreed to in this settlement for payment of attorney's fees and costs. Moreover, other than to state that these fees are "well within the reasonable range for employment law attorneys with comparable qualifications and experience in the New Orleans market," R. Doc. 34-2 at ¶ 7, the parties do not otherwise provide the Court with evidence of the prevailing rate in this district.

Looking to other cases in lieu of comparing Plaintiffs' attorney fee request to the Eastern District's lodestar rate, these rates appear to be reasonable for lawyers with comparable experience and expertise.  *See* R. Docs. 34-2, 34-3 (Stiegler & Chopin Declarations); *Hornbeck Offshore Servs. L.L.C. v. Salazar*, No. 10-1663, 2011 WL 2214765, at *8 (E.D. La. June 1, 2011), *adopted as modified on other grounds by,* 2011 WL 2516907 (E.D. La. June 23, 2011) (finding $295 to $420 hourly rates for partners and $180 to $195 hourly rates for associates to be high but reasonable considering comparable cases and the attorney's experience and expertise); *Cedotal v. Whitney Nat'l Bank,* No. 94-01397, 2010 WL 5582989, at *13 (E.D. La. Nov. 10, 2010), *adopted as modified on other grounds by,* 2011 WL 127157 (E.D. La. Jan. 14, 2011) (providing an overview of EDLA where hourly rates have been and awarded); *Ranger Steel Servs., LP v. Orleans Materials & Equip., Co.*, No. 10-112, 2010 WL 3488236, at *3 (E.D. La. Aug. 27, 2010) (holding that the $395 hourly rate charged by partner was reasonable);  *Hebert v. Rodriguez*, No. 08-5240, 2010 WL 2360718, at *2 (E.D. La. June 8, 2010) *aff'd*, 430 F. App'x 253 (5th Cir. 2011) (finding the $300 hourly rate not to be excessive).

With respect to Ms. Martin, Mr. Chopin's paralegal, the cost of paralegal services may be included in the assessment and award of attorney's fees if the following criteria are met:

1. the services performed must be legal in nature;
2. the performance of such services by the paralegal must be supervised by an attorney;
3. the qualifications of the paralegal performing the services must be specified in the application or motion requesting an award of fees in order to demonstrate that the paralegal is qualified by virtue of education, training, or work experience to perform substantive work;
4. the nature of the services performed by the paralegal must be specified in the application/ motion requesting an award of fees in order to permit a determination that the services performed were legal rather than clerical in nature;
5. the amount of time expended by the paralegal in performing the services must be reasonable and must be set out in the motion; and
6. the amount charged for the time spent by the paralegal must reflect reasonable community standards of remuneration.

*See Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 n.1 (5th Cir. 1980); *see also Missouri v. Jenkins*, 491 U.S. 274, 287 (1989). In this case, Ms. Martin meets the necessary criteria, *see* R. Doc. 34-3 at ¶ 7–8, and her rate of $100 per hour is reasonable. *See Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701 (E.D. La. 2009) (finding a paralegal's hourly rate of $75 was reasonable in 2009).

Plaintiffs' counsel expended 202.5 hours on this litigation, including the work of Ms. Martin, resulting in a total fee of $50,292.00. Considering the extensive investigative discovery necessitated by FLSA claims, these hours are reasonable. There is no reason to increase the lodestar based on the *Johnson* factors, as the time-intensive preparation is already reflected in the lodestar. The Court will thus proceed and check this lodestar calculation against the percentage recovery.

### 2. *Percentage Recovery*

"Courts have endorsed the practice of using the [percentage recovery] method of determining reasonableness of fees in class actions . . . to double check the fee." *Collins*, 568 F. Supp. at 729 (citing *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *3 (E.D. Pa. June 2, 2004)). The Manual on Complex Litigation states that a fee of twenty-five percent of a common fund "'represents a typical benchmark'" in common fund cases, while the "Ninth Circuit has adopted a benchmark of 25% in common fund cases," and common fee awards in securities suits "generally fall within the 20 to 33 per cent range." *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at * 19 (E.D. La. Mar. 2, 2009) (quoting MANUAL ON COMPLEX LITIGATION (4th) § 14.121)) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); NEWBERG ON CLASS ACTIONS § 14.6 (4th ed.)); *see also Collins*, 568 F. Supp. 2d at 729 (finding that a fee constituting twenty-four percent of the settlement is "lower

than the caselaw would support"); *In re Harrah's Entm't, Inc.*, No. 95-3925, 1998 WL 832574, *4 (E.D. La. Nov. 25, 1998) (noting that it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third); *In re Prudential-Bache Energy Income P'ships Secs. Litig.*, 1994 WL 150742, *1–2, 4 (E.D. La. April 13, 1994) (observing that awards in common fund cases have historically been computed typically in the twenty-five to thirty-three percent range and was intended to approximate what private counsel ordinarily would charge in a contingent fee contract, and listing awards in cases from this district).

In this case, Plaintiffs' counsel seeks a fee of $42,000.00, which represents 56.6% of the total settlement proceeds. Although this sum represents a sixteen percent decrease in their typical hourly rate, the fee is much higher than those typically approved by courts in this district. In some cases, an upward departure from the typical rate is warranted. In *Lackey v. SDT Waste & Debris Servs.*, for example, the court approved fees equal to forty percent of the gross settlement. The court found the fee to be reasonable "in light of the lodestar calculation and . . . the complexity, longevity, and extensive discovery that took place." 2014 WL 4809535, at *3. The court also noted that this fee was "in accord" with the forty percent contingency fee agreement signed by all the plaintiffs in that action.

Here, Plaintiffs did not explicitly agree to a contingency fee. Moreover, the *Lackey* court acknowledged that a forty percent contingency fee is more than most courts have allowed. Rather, "[j]udges in this court have awarded percentage amounts to class counsel in common fund settlements ranging from 6.5 percent in a multi-billion dollar settlement of the Vioxx drug litigation to the 20 to 29 percent range in cases with millions of dollars in the settlement fund." *Altier*, 2012 WL 161824, at 25. Contrastingly, in *Altier v. Worley Catastrophe Response, LLC,* another FLSA case, the court found fees that signified a twenty-five percent contingency to be

reasonable.  Based on these benchmarks, a 56.5% contingency fee—despite the fact that it

signifies a sixteen percent discount from counsels' typical fee calculation—is not reasonable.

Taking into account the fact that the proposed attorneys' fee already represents a sixteen

percent reduction of their typical rate, the Court will apply a percentage on the higher-end of

what has generally been deemed reasonable by courts in this jurisdiction and reduce the

attorneys' fees to thirty-three percent of the gross settlement.  This will reduce attorneys' fees to

$24,502.50.  However, the attorneys' costs shall be taken out of the gross settlement and not

deducted from the attorneys' fees.  Thus, Plaintiffs' attorneys shall receive $24,502.50 in

attorneys' fees, signifying thirty-three percent of the settlement, in addition to the $1,426.70 in

attorneys' costs.  This reduction is fair, and the sum adequately reimburses the attorneys.

The difference in the attorneys' fees requested and the fee awarded by the Court,

$17,497.50, shall be reallocated among the party Plaintiffs as follows: (1) Damian Horton,

$400.00, for a total of $900.00; (2) Linda Miller, $200.00, for a total of $300.00; (3) Ayana

Miller, $200.00, for a total of $300.00; (4) Lawrence Miller, $200.00, for a total of $300.00. The

remaining amount, $16,497.50, for a total of $46,520.80, shall be allocated to the remaining opt-

in plaintiffs in accordance with the settlement agreement's terms.

## II.     CONCLUSION

Based on the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' and Defendants' Agreed Motion for Approval of FLSA

Settlement, R. Doc. 34, be **GRANTED IN PART AND DENIED IN PART**.  The motion is

**GRANTED** insofar as the Court approves the overall settlement and **DENIED** only as to the

reduction of the attorneys' fees to a percentage recovery of thirty-three percent, $24,502.50,

which shall be awarded to Plaintiffs' attorneys in addition to costs in the amount of $1,426.70 for a total of $25,929.20.

      **IT IS FURTHER ORDERED** that the party Plaintiffs shall be awarded the following sums: (1) Damian Horton, $900.00; (2) Linda Miller, $300.00; (3) Ayana Miller, $300.00; (4) Lawrence Miller, $300.00. A total of $46,520.80 shall be allocated to the remaining opt-in Plaintiffs in accordance with the settlement agreement's terms.

      New Orleans, Louisiana this 16th day of January, 2019.

UNITED STATES DISTRICT JUDGE

16